UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
RIGAL J. BAPTISTE, on behalf of himself and all others              :    17-CV-1494(ARR)(VMS)
similarly situated,                                                 :
                                                                    :    NOT FOR ELECTRONIC
                    Plaintiff,                                      :    OR PRINT PUBLICATION
                                                                    :
       -against-                                                    :    OPINION & ORDER
                                                                    :
CARRINGTON MORTGAGE SERVICES, LLC,                                  :
                                                                    :
                    Defendant.                                      :
------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiff, Rigal Baptiste, brings this putative class action alleging that certain collections activities of defendant, Carrington Mortgage Services, LLC ("Carrington"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Specifically, plaintiff alleges that Carrington violated (1) Section 1692e(10) by failing to disclose in a servicing transfer letter that his mortgage indebtedness was increasing due to interest, Compl. ¶ 56, ECF No. 1, and (2) Section 1692e(11) by failing to state that a notice asking plaintiff to call his mortgage servicer was a communication from a debt collector, id. ¶ 60. Before the court is defendant's motion to dismiss.[1] Because Avila v. Riexinger & Associates, LLC, 817 F.3d 72 (2d Cir. 2016) requires debt collectors to disclose that a debt is increasing due to interest and fees, I deny defendant's motion with respect to the servicing transfer letter. I grant defendant's motion with respect to the notice asking plaintiff to call his mortgage servicer, because the least sophisticated consumer would understand that this notice was a communication from a debt

---

[1] See Mem. Law Supp. Def. Carrington Mortgage Services, LLC's Mot. Dismiss ("Mot."), ECF No. 12-4; Pl.'s Resp. Brief Opposing Def.'s Mot. Dismissal, ECF No. 13; Reply Mem. Supp. Def. Carrington Mortgage Services, LLC's Mot. Dismiss, ECF No. 14.

collector.

## BACKGROUND

The communications at issue in this case both relate to the mortgage secured by plaintiff's home. Compl. ¶ 14. At all relevant times, plaintiff's mortgage was in default. Id. ¶ 16. The last monthly payment on the mortgage was made in November 2012. Id. ¶ 17.

### A. The Letter

On September 12, 2016, Carrington sent a "Notice of Servicing Transfer" letter alerting plaintiff that his mortgage would no longer be serviced by Wells Fargo, but by Carrington. Not. of Servicing Transfer (the "Letter") at 1, Compl. Ex. A, ECF No. 1-1. The Letter provided that, going forward, all mortgage payments should be sent to Carrington, but that "[n]othing else about [the] mortgage loan will change." Id.

Attached to the letter was a document titled, "NOTICE Pursuant to Fair Debt Collection Practices Act 15 U.S.C. Section 1692, et seq." Id. at 3. It stated, "[t]his notice is to remind you that you owe a debt. As of the date of this Notice, the amount of debt you owe is $412,078.34." Id. The attachment also included the debt validity notice required by Section 1692g. Id.; see 15 U.S.C. § 1692g. A second document, purporting to be a notice in compliance with New York law, restates that the "[a]mount of the [d]ebt as of the date of this notice [was] $412,078.34" and advises that "[Carrington] is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose." Letter at 7. Finally, the letter encloses instructions to make a payment by telephone or online. Id. at 9.

### B. The Notice

On February 23, 2017, Carrington posted a notice on the door of plaintiff's home. Compl. ¶ 38. It read as follows:

> Date: 02/23/17
> Dear Borrower: Rego Baptiste
> URGENT NOTICE:
> Please contact your mortgage servicer immediately at: (800) 561-4567.
> Thank you.

Compl. Ex. B (the "Notice"), ECF No. 1-2, at *3.

## DISCUSSION

### A. Standard of Review

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and must also draw all reasonable inferences in favor of the plaintiff. Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 113 (2d Cir. 2013). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Only "a plausible claim for relief survives a motion to dismiss." LaFaro v. N.Y. Cardiothoracic Grp., 570 F.3d 471, 476 (2d Cir. 2009). Thus, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

In assessing the legal sufficiency of a pleading, "[w]hile courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings." Smart v. Goord, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006); accord. L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011).

### A. The FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To ensure that the statute protects the most vulnerable debtors, courts are to view debt collection communications from the perspective of the "least sophisticated consumer." Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005) (quoting Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir. 1993)). The "least sophisticated consumer" standard of review examines "how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996). "[I]n crafting a norm that protects the naïve and the credulous[,] the courts have carefully preserved the concept of reasonableness." Clomon, 988 F.2d at 1319. Thus, "FDCPA protection 'does not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the standard 'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'" Easterling v. Collecto, Inc., 692 F.3d 229, 233-34 (2d Cir. 2012) (quoting Clomon, 988 F.2d at 1319). The least sophisticated consumer "is neither irrational nor a dolt." Ellis v. Solomon and Soloman, P.C., 591 F.3d 130, 135 (2d Cir. 2010) (citing Russell, 74 F.3d at 34). "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law." Quinteros v. MBI Assocs., Inc., 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) (quoting Castro v. Green Tree Servicing LLC, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013)).

The parties do not dispute that plaintiff is a consumer within the meaning of the FDCPA.

4

## C. The Letter

Plaintiff alleges that the Letter violated Section 1692e(10) because it did not disclose that his mortgage balance was increasing due to interest, as required under Avila v. Riexinger & Associates, LLC, 817 F.3d 72 (2d Cir. 2016). Compl. ¶ 56. Section 1692e(10) is "a catch-all provision that bars '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt. . . .'" Altman v. J.C. Christensen & Assocs., Inc., 786 F.3d 191, 194 (2d Cir. 2015) (quoting 15 U.S.C. § 1692e(10)). In Avila, plaintiffs claimed that collection notices that included the current balance of their debt, but did not state "that the balance might increase due to interest and fees" were misleading under Section 1692e. Avila, 817 F.3d at 74. The Second Circuit agreed, deciding "that plaintiffs ha[d] stated a claim that the collection notices at issue . . . [were] misleading within the meaning of Section 1692e" because "[a] reasonable consumer could read the notice and be misled into believing that she could pay her debt in full by paying the amount listed on the notice." Id. at 76. The court further reasoned as follows:

> In fact, however, if interest is accruing daily, or if there are undisclosed late fees, a consumer who pays the "current balance" stated on the notice will not know whether the debt has been paid in full. The debt collector could still seek the interest and fees that accumulated after the notice was sent but before the balance was paid, or sell the consumer's debt to a third party, which itself could seek the interest and fees from the consumer.

Id. In other words, "the statement of an amount due, without notice that the amount is already increasing due to accruing interest or other charges, [could] mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account." Id. The Second Circuit thus held "that the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees." Id.

There is no dispute that interest was accruing on the mortgage. Compl. ¶ 32; Mot. at 2. This fact was not disclosed on the Letter. Compl. ¶ 31; Letter. Therefore, the letter is

5

misleading for the same reasons explained in Avila. Defendant makes four arguments against this conclusion.

First, defendant argues that Avila is inapplicable because the Letter was not a collection attempt, but only a notice required under Section 1692g. Mot. at 5-6. According to defendant, because the Letter is not a collection attempt, it cannot be misleading under Section 1692e. The Avila court rejected this argument, explaining the relationship between Sections 1692g and 1692e as follows:

> Section 1692g concerns only the disclosures related to a consumer's need to verify a debt, not the more general disclosures that may be necessary under Section 1692e to ensure that a collection notice is not misleading. The two sections have different aims, and compliance with Section 1692g does not guarantee compliance with Section 1692e, which always applies in connection with the collection of any debt by a debt collector.

Avila, 817 F.3d at 76. In other words, Section 1692e applies regardless of whether the notice sent complied with, or was intended to comply with, Section 1692g.

Thus, the crucial inquiry is whether the Letter was sent "in connection with the collection of [a] debt." See 15 U.S.C. § 1692e. Carrington argues that only "collection letters" meet this standard. Mem. at 5-8. The Second Circuit rejected precisely this argument in Hart v. FCI Lender Servs., Inc., 797 F.3d 219, 226-27 (2d Cir. 2015). In Hart, the plaintiff challenged a notice sent by his mortgage servicer as required under the Real Estate Settlement Procedures Act ("RESPA"). Id. at 220. The mortgage servicer argued that because the letter "was intended merely to comply with RESPA by providing certain information[,] . . . it was not aimed at collecting a debt[] and thus did not trigger the FDCPA[]." Id. at 223 (alterations and quotation omitted). The Second Circuit rejected this argument, finding that the letter was an attempt to collect a debt. Id. at 226. The factors relevant to this conclusion are as follows:

> The Letter references Hart's particular debt, directs Hart to "mail [his]

6

> payments . . . to FCI Lender Services, Inc." at a specified address, and refers to the FDCPA by name. More critically, it warns Hart that he must dispute the debt's validity within thirty days after receiving the Letter or his debt will "be assumed to be valid." Finally, and most importantly, the Letter, in its two-page attachment . . . announces itself as an attempt at debt collection. . . . A reasonable consumer would credit the Letter's warning, its instruction to take action within thirty days, and its statement that it represents an attempt to collect a debt.

Id. (citations omitted). Each of these observations also applies to the Letter at issue here. Therefore, the Letter was sent in connection with the collection of a debt. Section 1692e and case law interpreting that section, including Avila, apply.

Next, defendant argues that Avila does not apply to ongoing mortgage loans like plaintiff's debt because "[e]ven the least sophisticated mortgage borrower knows both that interest continuously accrues on the unpaid mortgage balance and [that] fees will be incurred if monthly payments are not timely made." Mot. at 8-9.

Generally, mortgage servicers are exempted from the FDCPA. See 15 U.S.C. § 1692a(6)(F) (exempting from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."). However, "[a] mortgage servicer is a 'debt collector' within the meaning of the FDCPA if the mortgage was in default at the time the servicer began servicing the debt." Zirogiannis v. Seterus, Inc., 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016) (citing Kapsis v. Am. Home Mort. Servicing, Inc., 923 F. Supp. 2d 430, 442 (E.D.N.Y. 2013)). Here, plaintiff alleges that his loan was in default at the time Carrington began servicing it. Compl. ¶ 20.

The court is aware of no authority holding that mortgage servicers collecting on a mortgage in default are treated differently than any other debt collector subject to the FDCPA. See generally Kilpakis v. JPMorgan Chase Fin. Co., LLC, -- F. Supp. 3d --, No. 16-cv-2690

(ADS) (AKT), 2017 WL 112518, at *6-9 (E.D.N.Y. Jan. 10, 2017) (discussing alleged FDCPA violations by mortgage servicer without noting any different standard); ValleCastro v. Tobin, No. 3:13-cv-1441, 2015 WL 6478412, at *4-10 (D. Conn. Oct. 27, 2015) (same); Scott v. Am. Security Ins. Co. (In re Scott), No. 16-12045 (JLG), 2017 WL 2579033, at *24 n.59 (Bankr. S.D.N.Y. June 14, 2017) ("'Debt' can include '[an] obligation to make mortgage payments, as well as fees, penalties, and interest on that mortgage' under the FDCPA." (citing Yarney v. Ocwen Loan Servs., LLC (In re Yarney), 929 F. Supp. 2d 569, 575 (W.D. Va. 2013))). I therefore reject defendant's argument that whether Avila's requirements apply turns on the type of debt being collected.[2]

Third, defendant argues that, even if Avila applies, the Letter fits within Avila's safe-harbor language because it assures plaintiff that "[n]othing else about [his] mortgage loan will change." Mot. at 7-8; Letter at 1. In Avila, the Second Circuit provided that "a debt collector [is not] subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice either accurately informs the consumer that the amount of the debt stated in the letter will increase over time, or clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date." 817 F.3d at 77. The Letter does neither, and therefore does not fall within Avila's safe harbor.[3]

---

[2] Nor does the fact that plaintiff's mortgage disclosed that interest would accrue, and fees be charged for late payments, affect this conclusion. See Mot. at 8-9. Presumably all credit card agreements contain the same language, yet I am aware of no case – and defendant cites none – charging the least sophisticated consumer with knowledge of the underlying contract creating the debt now being collected.

[3] Once again, the fact that interest and/or fees may be disclosed in the note creating the underlying obligation that led to the debt is not relevant. See, supra, n.2.

Finally, defendant argues that any violation of its obligations under Avila is not material. Mot. at 9-10. The Second Circuit has never explicitly imposed a materiality requirement on FDCPA violations, but has indicated in a recent summary order that it would. See Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) (citing Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F. App'x 89, 94 (2d Cir. 2012)). In that same summary order, the Circuit defined a material violation as "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection." Gabriele, 503 F. App'x at 96. The Avila court noted that, "if interest is accruing daily, or if there are undisclosed late fees, a consumer who pays the 'current balance' stated on the notice will not know whether the debt has been paid in full." Avila, 817 F.3d at 76. Thus, a violation of Avila "could impede a consumer's ability to respond to . . . collection," Gabriele, 503 F. App'x at 96, and such violation is material.

For all of these reasons, I deny defendant's motion with respect to the Letter.

**D. The Notice**

Section 1692e(11) requires that debt collectors disclose in all communications in connection with the collection of any debt that the communication is from a debt collector. 15 U.S.C. § 1692e(11). Defendant argues that Section 1692e does not apply to the Notice, because it was not a communication made "in connection with the collection of any debt." Mot. at 11 (quoting 15 U.S.C. § 1692e). Alternatively, defendant argues that the Notice adequately discloses that it is from a debt collector. Id. at 12.

In the Second Circuit, "whether a communication is 'in connection with the collection of [a] debt' is . . . to be determined by reference to an objective standard . . . [that] ask[s] whether . . . a consumer receiving the communication could reasonably interpret it as being sent

9

'in connection with the collection of [a] debt.'" Hart, 797 F.3d at 225. The "sender's subjective purpose" does not matter. Id. (citations omitted). "[I]f a consumer receiving a letter could reasonably understand it to be a communication in connection with the collection of a debt, then the consumer is entitled to the protections Congress has mandated for such communications." Id.

Here, "a consumer . . . could reasonably understand [the Notice] to be a communication in connection with the collection of a debt." Id. The Notice, affixed to plaintiff's door, requests that he contact his mortgage servicer immediately. The least sophisticated consumer would surmise that such a request related to his mortgage servicer, whom he would know as a debt collector. Few people would understand an "urgent" request to call a debt collector as anything other than a communication in connection with a debt. See Cohen v. Ditech Fin. LLC, No. 15-cv-7124 (NSR), 2017 WL 894429, at *5 (S.D.N.Y. Mar. 3, 2017) ("The [c]ourt finds the door hanger to be a 'communication' under the FDCPA – at the very least, it is an indirect communication concerning [p]laintiff's debt; namely, that a mortgage servicer . . . is expecting an immediate call from [p]laintiff . . . ."). Defendant's arguments to the contrary relate to Carrington's intentions, see Mot. at 11-12, which are simply not relevant to the question of whether or not the FDCPA applies, see Hart, 797 F.3d at 225.

As the foregoing analysis suggests, the Notice sufficiently disclosed that it was a communication from a debt collector. The FDCPA requires no "'magic words' or specific phrases" to be used. Shanker v. Fair Collection & Outsourcing, LLC, No. 3:09-cv-1759(FLW), 2009 WL 1767580, at *4 (D.N.J. June 19, 2009). The Tenth Circuit has noted that the Section 1692e(11) "does not place the required disclosure in quotation marks or set forth any specific required wording for the disclosure." Dikeman v. Nat'l Educators, Inc., 81 F.3d 949, 952 (10th

10

Cir. 1996). Once again, the test is whether the least sophisticated consumer would be aware that the communication was disseminated by a debt collector. See Forman v. Academy Collection Serv., Inc., 388 F. Supp. 2d 199, 205 (S.D.N.Y. 2005) (Language identifying a debt collector as such "is not required to" "track the language of the statute verbatim" "as long as the warning comes across." (citing Gaetano v. Payco, 774 F. Supp. 1404, 1409 (D. Conn. 1990))). This is essentially the same analysis as required to find that the FDCPA applies under Hart.

In plaintiff's cases, the debt collector identified itself only by the name of the firm, a practice which courts have found to be insufficient. See, e.g., Wong v. Green Tree Servicing, LLC, No. 13-7887 (ES), 2014 WL 4418077, at *1 (D.N.J. Sept. 5, 2014); Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 648 (S.D.N.Y. 2006).[4] Here, by contrast, defendant is identified by its functional role, as plaintiff's "mortgage servicer." Once again, even the least sophisticated consumer would know that a mortgage servicer is a debt collector. I therefore grant defendant's motion with respect to the Notice.[5]

---

[4] Other cases plaintiff cites were decided on default judgment and do not disclose the content of the phone messages at issue. See, e.g., Hirsch v. ANI Mgmt. Grp., Inc., No. 12-CV-3454 (ARR) (RML), 2013 WL 3093977, at *1 (E.D.N.Y. June 18, 2013); Dona v. Midland Credit Mgmt., Inc., No. CV 10-0825 (JS) (WDW), 2011 WL 941204, at *1 (E.D.N.Y. Feb. 10, 2011), R. & R. adopted by 2011 WL 939724 (E.D.N.Y. Mar. 15, 2011).

[5] I do not reach defendant's remaining arguments regarding dismissal of this claim.

## CONCLUSION

Defendant's motion is granted in part and denied in part. Specifically, only claims with respect to Exhibit B to the Complaint are dismissed.

SO ORDERED.

                                                                     /s/
                                          Allyne R. Ross
                                          United States District Judge

Dated:        July 5, 2017
                 Brooklyn, New York